IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZAFTR INC. n/k/a SVELLA FINANCIAL CORP.<br>**Plaintiff,**<br><br>v.<br><br>JOHN KIRK, KIRK LAW PLLC, and NATIONAL LIABILITY & FIRE INSURANCE COMPANY d/b/a ATTORNEY PROTECTIVE,<br>**Defendants.** | CIVIL ACTION<br><br><br><br>NO. 24-2702 |

## OPINION

After several years of litigation, Plaintiff Zaftr Inc, n/k/a Svella Financial Corp. ("Zaftr") and Defendants John Kirk and Kirk Law PLLC (together, the "Kirk Defendants") executed an agreement (the "Settlement Agreement") to resolve Zaftr's claims relating to a series of agreements and unrealized transactions for the purchase of 10,000 Bitcoin. The instant case arises out of the Kirk Defendants' alleged breach of that Settlement Agreement. Specifically, Zaftr alleges that the Kirk Defendants failed to make $400,000 in required payments. In an effort to collect a portion of this outstanding sum, Zaftr also seeks a declaratory judgment against the Kirk Defendants' insurance company, National Liability & Fire Insurance Company d/b/a Attorney Protective ("National Liability"), to the effect that the policy issued to the Kirk Defendants by National Liability affords coverage for Zaftr's claims against the Kirk Defendants.

The Kirk Defendants now move to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) while National Liability moves to dismiss pursuant to Rule 12(b)(1). For the reasons that follow, the Kirk Defendants' Motion will be denied, and National Liability's Motion will be granted.

1

I.     BACKGROUND[1]

The following factual recitation is taken from Zaftr's Amended Complaint, well-pleaded allegations from which are taken as true at this stage. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

In 2020, Zaftr entered into six agreements and paid over $5.6 million in an attempt to purchase 10,000 Bitcoin from a third-party seller.  Under the terms of those agreements, the Kirk Defendants—who represented the entity appointed as a broker to act and negotiate a deal on behalf of the seller—agreed to hold Zaftr's purchase funds in escrow.  Only upon Zaftr's receipt of the Bitcoin were the Kirk Defendants authorized to release those funds to the seller.  Months later, however, Zaftr had not received any Bitcoin and was unable to secure a return of the purchase funds.  As a result, Zaftr initiated a lawsuit against, among other parties, the Kirk Defendants alleging that they breached their escrow obligations by sending portions of Zaftr's purchase funds to several seller-designated bank accounts before Zaftr received any of the Bitcoin for which it paid under the agreements.

On November 27, 2023, on the understanding that Zaftr and the Kirk Defendants reached a tentative settlement agreement, this Court stayed the underlying case for 90 days until February 25, 2024, by which point the parties were to have filed a Stipulation of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a).  In December 2023, Zaftr and the Kirk Defendants executed the Settlement Agreement to resolve the dispute—a document to which Zaftr and the Kirk Defendants are the only signatories and entities defined as parties.  In Paragraph 1 of the Settlement Agreement, the Kirk Defendants agree, in relevant part, to pay

---

[1] The Court writes primarily for the benefit of the parties and assumes familiarity with the facts pertaining to the underlying dispute between Zaftr and the Kirk Defendants, which are set forth in prior opinions.  *See Zaftr Inc. v. Lawrence*, 2021 WL 4989769 (E.D. Pa. Oct. 27, 2021); *Zaftr Inc. v. Lawrence*, 2023 WL 349256 (E.D. Pa. Jan. 20, 2023).

Zaftr a total of $700,000 to be delivered as follows:

>(a) $225,000 from the Kirk Defendants' professional liability insurance carrier Attorney Protective, through National Liability & Fire Insurance Company ("AttPro") within 30 calendar days of the receipt by counsel of record for the Kirk Defendants of an executed version of this Agreement by Zaftr and an executed Internal Revenue Service Form W-8-BEN-E from Svella Technologies Ltd. ("Zaftr Parent Co."), or the equivalent document applicable in Canada.
>
>(b) $50,000 from the Kirk Defendants within 30 calendar days of the receipt by counsel of record for the Kirk Defendants of an executed version of this Agreement by Zaftr and an executed Internal Revenue Service Form W-8-BEN-E from Zaftr Parent Co., or the equivalent document applicable in Canada.
>
>(c) $25,000 from the Kirk Defendants within 60 calendar days of the receipt by counsel of record for the Kirk Defendants of an executed version of this Agreement by Zaftr and an executed Internal Revenue Service Form W-8-BEN-E from Zaftr Parent Co., or the equivalent document applicable in Canada.
>
>(d) $200,000 from the Kirk Defendants on or before May 1, 2024.
>
>(e) $200,000 from the Kirk Defendants on or before October 1, 2024.

The Settlement Agreement also provides that "[s]hould the Kirk Defendants fail to make a full and timely payment under Paragraph 1(d) of this Agreement, the payment owed under Paragraph 1(e) shall become immediately due and payable to Zaftr."

In the event the Kirk Defendants fail to comply with any of these payment obligations, Paragraph 1 of the Settlement Agreement purports to preserve Zaftr's "right to challenge AttPro's [*i.e.*, National Liability's] denial of coverage for the claims filed by Zaftr against the Kirk Defendants." The agreement goes on to state that:

>The Parties and AttPro agree that neither this Agreement, nor any of the terms contained herein, shall have any impact on whether coverage exists. This Agreement may not be used in any way as a basis for denying coverage or in arguing that coverage does not exist. If successful in a coverage challenge, Zaftr may seek to collect the difference between the Settlement Sum less any portion of the Settlement Sum delivered to Zaftr up to a maximum amount of $275,000. Each Party shall bear its own fees and costs in any coverage challenge.
>
>Finally, the Settlement Agreement provides that within 14 days of "receiving full and

3

timely payments under Paragraph 1(a), 1(b), and 1(c) of this Agreement, Zaftr shall cause to be filed in the Civil Action a fully executed Stipulation of Dismissal, with prejudice, and without costs." The Kirk Defendants, for their part, "agree to cooperate in the filing of such Stipulation of Dismissal."

The Kirk Defendants, after seeking indemnification through the professional liability insurance policy with National Liability, made a timely payment in satisfaction of Paragraph 1(a) of the Settlement Agreement. The policy identifies the Kirk Defendants as the sole named insureds and ostensibly covers any "claim [that] arises from a wrongful act committed by [the named insured] after the Policy retroactive date and before the Policy expiration date," so long as "[t]he claim arises from an act, error or omission in the performance of legal services by you on behalf of the Named Insured or any predecessor firm." The Kirk Defendants made further timely payments pursuant to Paragraphs 1(b) and (c) of the Settlement Agreement, after which Zaftr prepared and sent to the Kirk Defendants a proposed Stipulation of Dismissal. Unable to reach consensus as to the terms of that Stipulation, Zaftr ultimately filed a Motion for Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2), which was granted as uncontested.

The Kirk Defendants have, however, yet to pay the remaining $400,000 owed under Paragraphs 1(d) and (e) of the Settlement Agreement. Although Zaftr maintains that National Liability's professional liability insurance policy with the Kirk Defendants (the "Insurance Policy") provides coverage, National Liability disputes both that: (1) the Insurance Policy affords coverage for the Kirk Defendants' remaining liability to Zaftr; and, (2) Zaftr can proceed directly against National Liability to "collect the difference between the Settlement Sum less any portion of the Settlement Sum delivered to Zaftr up to a maximum amount of $275,000." In its

brief, National Liability explains that while it initially paid $225,000 to indemnify the Kirk Defendants in satisfaction of their obligations under Paragraph 1(a) of the Settlement Agreement, at the time it "contest[ed], and continues to contest . . . that the [Insurance] Policy affords coverage for any of the Kirk Defendants' liability to Zaftr" altogether.

## II.   LEGAL STANDARD

Rule 12(b)(1) provides that a claim may be dismissed for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1); *In re Schering Plough Corp. Intron*, 678 F.3d 235, 243 (3d Cir. 2012). A motion to dismiss for want of Article III standing is properly brought pursuant to Rule 12(b)(1) because Article III provides "jurisdictional limitation[s]" that implicate "the Court's power to hear" claims. *Potter v. Cozen & O'Connor*, 46 F.4th 148, 154-57 (3d Cir. 2022); *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). A facial attack, at bottom, "contests the sufficiency of the pleadings." *In re Schering*, 678 F.3d at 243. As the adjective suggests, such an attack considers a complaint on its face and asserts that "it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law, or because there is no indication of a diversity of citizenship among the parties, or because some other jurisdictional defect is present." *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014). A factual attack, on the other hand, "concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008) (cleaned up). So, for instance, "while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking." *Aichele*, 757 F.3d at 358. Regardless of the type of attack at issue, "the plaintiff bears the burden of establishing the

5

elements of standing, and each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *FOCUS v. Allegheny Cnty. Ct. of Common Pleas*, 75 F.3d 834, 838 (3d Cir. 1996) (citation omitted).

Here, as all parties agree, both Rule 12(b)(1) Motions are properly understood as facial attacks since they assert that the Amended Complaint lacks sufficient factual allegations to establish standing. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632-33 (3d Cir. 2017). Because a facial attack "relies solely on the pleadings," it is analyzed under "the same standard of review [used] when assessing a motion to dismiss for failure to state a claim" under Rule 12(b)(6). *Finkelman v. NFL*, 810 F.3d 187, 194 (3d Cir. 2016). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. "The court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff," *In re Schering,* 678 F.3d at 243 (citing *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000)), with the question being "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief," *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted).

### III.  DISCUSSION

#### A.  Count I: Breach of Contract Against the Kirk Defendants

Count I of the Amended Complaint alleges that the Kirk Defendants breached the

Settlement Agreement by failing to pay Zaftr a total of $400,000 required under Paragraphs 1(d) and (e). The Kirk Defendants now move to dismiss the Amended Complaint pursuant to Rule 12(b)(1) arguing that Zaftr's claim is both unripe and lacks standing, and pursuant to Rule 12(b)(6) on the grounds that Zaftr has failed to plausibly state a claim for breach of contract.

### i.      *Standing & Ripeness*

The Kirk Defendants contend that Zaftr does not have standing to pursue its breach of contract claim because Zaftr "has yet to suffer any concrete injury" traceable to them. Specifically, they argue that Zaftr materially breached two conditions precedent to bringing this lawsuit that were outlined in the Settlement Agreement. As explained more fully below, those conditions precedent include: (1) executing a stipulation of dismissal within the time period prescribed by the Settlement Agreement; and, (2) refraining from initiating enforcement actions related to the Settlement Agreement during the "non-litigation period" contemplated therein. These failures, argue the Kirk Defendants, frustrated the "core purpose" of the agreement and prevented "the remaining payments from being triggered" under Paragraphs 1(d) and (e).[2] In view of these circumstances, the Kirk Defendants aver that Zaftr's complained-of injury and claim for damages are not ripe for adjudication and "speculative at best."

At the outset, the Kirk Defendants' contention that Zaftr's material breach prevented it from sustaining a "concrete injury" is not an issue to be considered during the standing inquiry. That is because this line of argument is fundamentally an affirmative defense to Zaftr's breach of contract claim, *see Orion Drilling Co., LLC v. EQT Prod. Co.*, 2019 WL 4273861, at *18 (W.D. Pa. Sept. 10, 2019), *aff'd*, 826 F. App'x 204 (3d Cir. 2020) (describing material breach as an

---

[2] Paragraph 1(d) provides that Zaftr shall receive a payment of "$200,000 from the Kirk Defendants on or before May 1, 2024," while Paragraph 1(e) states that Zaftr shall receive another payment of "$200,000 from the Kirk Defendants on or before October 1, 2024." In the clause directly following this payment schedule, the Settlement Agreement states: "Should the Kirk Defendants fail to make a full and timely payment under Paragraph 1(d) of this Agreement, the payment owed under Paragraph 1(e) shall become immediately due and payable to Zaftr."

affirmative defense to breach of contract), and "a district court must take care not to reach the merits of a case when deciding a Rule 12(b)(1) motion," *CNA*, 535 F.3d at 144. "Although standing and merits questions may involve overlapping facts, standing is generally an inquiry about the plaintiff" that asks: "is this the right person to bring this claim?" *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d Cir. 2016).

Thus, rather than contending that Zaftr is the wrong entity to bring such a lawsuit, the Kirk Defendants' Rule 12(b)(1) Motion amounts to an argument that Zaftr's claims "are actually without merit" because the Kirk Defendants have "done nothing wrong." *Id.* at 349. "[T]he ordinary course of litigation will root out [whether this is the case] [f]or it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction." *Id.* Thus, whether Zaftr "has standing to bring claims and whether [Zaftr's] claims are barred by a . . . defense are two separate questions to be addressed on their merits." *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 346 (3d Cir. 2001).

Turning first to the question of standing: Zaftr has adequately established standing to pursue its claim against the Kirk Defendants under Article III of the U.S. Constitution. Plaintiffs have standing under Article III if they have "(1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citation omitted). Generously construed, the Kirk Defendants only dispute prong one of the standing inquiry: whether Zaftr has sufficiently alleged an injury-in-fact. This element requires plaintiffs to show that they have "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (quoting

8

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "Monetary harm is a classic form of injury-in-fact." *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 293 (3d Cir. 2005). It follows, therefore, that in seeking to recover $400,000 in payments owed to it by the Kirk Defendants under the Settlement Agreement, Zaftr has demonstrated a paradigmatic injury-in-fact. *See Sylvester v. Depositors Ins. Co.*, 481 F. Supp.3d 412, 418 (E.D. Pa. 2020) ("[A] plaintiff seeking to recover money she lost due to the breach of a contract to which she was a party has standing because monetary injuries ordinarily constitute an injury in fact and there is a common law basis for recovery for an injury arising from a breach of contract."). Additionally, "the potential award of nominal damages alone is sufficient" to confer standing upon Zaftr under Count I, *see Republic Servs. of Pennsylvania, LLC v. Caribbean Operators, LLC*, 301 F. Supp.3d 468, 476 (E.D. Pa. 2018), as Pennsylvania law "entitles the injured party to at least nominal damages" for a breach of contract claim, *see Scobell, Inc. v. Schade*, 688 A.2d 715, 719 (Pa. Super. 1997).

The Kirk Defendants' ripeness argument fares no better. The doctrines of standing and ripeness are related, as both pertain to Article III's limitation on the jurisdiction of federal courts to adjudicate live "cases" and "controversies." *See Presbytery of New Jersey of the Orthodox Presbyterian Church v. Florio*, 40 F.3d 1454, 1462 (3d Cir. 1994). However, while "standing is about *who* can sue . . . ripeness is about *when* they can sue." *Id.* (emphases in original) (citation omitted). To that end, the "[r]ipeness doctrine is invoked to determine whether a dispute has yet matured to a point that warrants decision." 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3532. For a claim to be ripe for adjudication, it must "grow out of a real, substantial controversy between parties' involving a dispute definite and concrete." *Peachlum v. City of York*, 333 F.3d 429, 434 (3d Cir. 2003) (citations and quotations omitted).

"The question in each case is whether the facts alleged show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to justify judicial resolution." *Id.* Claims that rest upon "contingent future events that may not occur as anticipated, or indeed may not occur at all," however, are not ripe. *Doe v. Cnty. of Centre, PA*, 242 F.3d 437, 453 (3d Cir. 2001) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

Here, Zaftr's claim is not dependent on some contingent future acts or uncertain injuries, as the events forming the basis of Zaftr's breach of contract claim have already transpired. Taking the allegations in the Amended Complaint as true, which is required at this stage, *see Fowler*, 578 F.3d at 210-11, the Kirk Defendants failed to pay Zaftr $200,000 on or before May 1, 2024 in satisfaction of Paragraph 1(d) of the Settlement Agreement. By missing this deadline, the required $200,000 payment under Paragraph 1(e) of the Settlement Agreement also became "immediately due and payable to Zaftr" under the acceleration clause. But as of August 16, 2024, the date on which Zaftr filed the Amended Complaint, the Kirk Defendants had not paid any of the $400,000 that Zaftr alleges they owe. Because the events and injuries giving rise to this dispute have already occurred, the parties' controversy is not a remote possibility, but rather, as stated, an actuality that is ripe for adjudication. *See Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 244 (1952) ("The disagreement must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them.").

Accordingly, having determined that Zaftr has standing to pursue its ripe breach of contract claim, the Kirk Defendants' Rule 12(b)(1) Motion shall be denied.

10

### *ii.* *Merits*

The Kirk Defendants next assert that Zaftr's breach of contract claim should be dismissed pursuant to Rule 12(b)(6). To state a claim for breach of contract under Pennsylvania law, which both parties agree is applicable here, a plaintiff must sufficiently allege the following three elements: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and, (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (citing *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. 1999)).

Like their standing argument, the Kirk Defendants maintain that Zaftr's claim is "legally untenable" because Zaftr materially breached two conditions precedent to bringing this lawsuit outlined in the Settlement Agreement. Namely, Zaftr: (1) failed to execute a Stipulation of Dismissal "[w]ithin 14 days after receiving full and timely payments [from the Kirk Defendants] under Paragraph 1(a), 1(b), and 1(c) of" the Settlement Agreement; and, (2) prematurely initiated the instant action during the "non-litigation period" contemplated therein. The Kirk Defendants further submit that Zaftr's material breach interfered with their ability to perform their subsequent payment obligations and ultimately "frustrated the core purpose of the Settlement Agreement," which they characterize as "resolv[ing] a long-standing dispute" and "providing a period of time free from active litigation so that [they] could generate the resources necessary to meet their financial obligations."

In response, Zaftr asserts that the Amended Complaint states a colorable claim for breach of contract and has thus it has met its burden at this stage. Zaftr also argues that "there plainly is no condition precedent in the Settlement Agreement requiring Zaftr to dismiss the [underlying] Civil Action before initiating an action for breach of the [Settlement] Agreement, nor is there any non-litigation period required by the Settlement Agreement" such that it materially breached the

11

Settlement Agreement.

For the following reasons, the Amended Complaint plausibly states a *prima facie* claim for breach of contract. It alleges that there is a written contract between the parties (which is attached as an exhibit to the Amended Complaint); that by its terms, the Kirk Defendants were obligated to remit $700,000 to be delivered according to a structured payment schedule; and, that despite these payment obligations, the Kirk Defendants have only paid $300,000, causing Zaftr to sustain $400,000 in damages.

The Kirk Defendants' arguments regarding Zaftr's purported material breach of conditions precedent and frustration of contractual purpose are unavailing at this stage since they are affirmative defenses upon which a motion to dismiss can only be granted when such defenses are "apparent on the face of the complaint." *Dragotta v. W. View Sav. Bank*, 395 F. App'x 828, 830 (3d Cir. 2010) (citing *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997)); *see also Orion Drilling Co*, 2019 WL 4273861, at *18 (describing material breach as an affirmative defense to breach of contract); *Safeco Ins. Co. of Am. v. A & L, Inc.*, 2008 WL 2120504, at *2 (W.D. Pa. May 21, 2008) (describing frustration of purpose as an affirmative defense to breach of contract). Nowhere on the face of the Amended Complaint is it evident that the Parties intended to make the Kirk Defendants' payments under Paragraphs 1(d) and (e) conditional on Zaftr's filing of a stipulation of dismissal or adherence to any non-litigation period. *Cf. Vill. Beer & Beverage, Inc. v. Vernon D. Cox & Co.*, 475 A.2d 117, 122 (Pa. Super. 1984) (defining a condition precedent as a condition that "must occur before performance under a contract arises"). Further, no provision in the Settlement Agreement clearly spells out this arrangement in the way the Kirk Defendants appear to contemplate. And "[w]hile the parties to a contract need not utilize *any* particular words to create a condition precedent, an act or event

designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention." *Acme Markets, Inc. v. Fed. Armored Exp., Inc.*, 648 A.2d 1218, 1220 (Pa. Super. 1994) (emphasis in original); *see also Castle v. Cohen*, 840 F.2d 173, 177 (3d Cir. 1988) (explaining that under Pennsylvania law, a condition precedent must be expressed in clear language or it will be construed as a promise) (citation omitted). As the failure to comply with a condition precedent operates as a forfeiture, such conditions are generally disfavored. *See Castle*, 840 F.2d at 177 (citing Restatement (Second) of Contracts § 227, cmt. b (1981)).

Whether those clauses operate as conditions precedents need not be decided at this stage, however, because Zaftr's "failure" to satisfy those conditions necessarily hinges on "issue[s] of fact not properly resolved on a motion to dismiss." *Ctr. For Concept Dev., Ltd. v. Godfrey*, 1998 WL 792157, at *2 (E.D. Pa. Nov. 10, 1998). For instance, Zaftr's contention that it was forced to forego filing a Stipulation of Dismissal in favor of a Motion for Voluntary Dismissal due to the Kirk Defendants "unequivocal[] refus[al] to cooperate in the filing of the Stipulation of Dismissal" cannot be considered at this stage because it depends on new facts not found in the allegations of the Amended Complaint.[3] *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Accordingly, because Zaftr has plausibly stated a claim for breach of contract and the Kirk Defendants' arguments hinge on issues of fact that are not capable of resolution at this stage, their Rule 12(b)(6) Motion shall be denied.

---

[3] Zaftr appended several emails to its brief purporting to demonstrate the Kirk Defendants' lack of cooperation, but to avoid converting the instant Rule 12(b)(6) Motion into one for summary judgment under Rule 56, "only the allegations contained in the pleading" will be considered to "determine its sufficiency." *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133-34 (3d Cir. 2016) (collecting cases); Fed. R. Civ. P. 12(d).

### B. Count II: Declaratory Judgment Against National Liability

Count II of the Amended Complaint, which National Liability moves to dismiss pursuant to Rule 12(b)(1), seeks a declaratory judgment against National Liability that "coverage exists under the Kirk Defendants' Insurance Policy with [National Liability] regarding Zaftr's claims against the Kirk Defendants in the [underlying] Civil Action." The basis for National Liability's Motion is that Zaftr does not have standing to raise its claim against National Liability.

A declaratory judgment may be issued "only when the constitutional standing requirements of a 'case' or 'controversy' are met." *St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands*., 218 F.3d 232, 240 (3d Cir. 2000) (citing U.S. Const. art. III, § 2; *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 272 (1941)); *see also* Declaratory Judgment Act, 28 U.S.C. § 2201(a) ("In a case of actual controversy . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration[.]"). A plaintiff has standing under Article III to seek a declaratory judgment if they have: (1) suffered an injury-in-fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *See Lutter v. JNESO*, 86 F.4th 111, 124 (3d Cir. 2023) (citing *Spokeo,* 578 U.S. at 338). However, "[e]ven when a case falls within these constitutional boundaries, a plaintiff may still lack standing under the prudential principles." *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99-100 (1979); *see also Miller v. Nissan Motor Acceptance Corp*., 362 F.3d 209, 221 (3d Cir. 2004) ("Standing subsumes a blend of constitutional requirements and prudential considerations." (quotations omitted)). "[P]rudential standing requirements are not derived from Article III," and instead are a "set of judge-made rules . . . meant to help the courts 'avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those best suited to assert a particular claim.'" *Potter*, 46 F.4th at 154 (quoting *Freeman v.*

14

*Corzine*, 629 F.3d 146, 154 (3d Cir. 2010)). To establish standing under these principles, a litigant must assert its "own legal interests rather than those of third parties," which also must be "within the zone of interests intended to be protected by the statute, rule, or constitutional provision on which the claim is based" and not merely "abstract questions of wide public significance which amount to generalized grievances." *Oxford Assocs. v. Waste Sys. Auth. of E. Montgomery Cty.*, 271 F.3d 140, 146 (3d Cir. 2001); *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985).

In view of this distinction, whether National Liability's argument attacks Zaftr's lack of standing under Article III or on prudential grounds must be determined as a threshold matter. National Liability asserts that Zaftr lacks standing because its request for a declaratory judgment regarding coverage under the Insurance Policy essentially seeks to assert the Kirk Defendants' legal interests as policyholders rather than its own since Zaftr is not, by its own admission, a party to, third-party beneficiary of, or assignee of any rights under the policy. This argument is a paradigmatic challenge under the third-party standing doctrine. *See Potter*, 46 F.4th at 154 (explaining that this doctrine requires a plaintiff to "assert [its] own legal rights and interests" without "rest[ing] [its] claim to relief on the legal rights or interests of third parties" (citing *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990)).

Recognizing that courts "have not always spoken clearly about whether the third-party standing doctrine . . . implicates Article III" or judge-made prudential principles, *id.* at 155, the Third Circuit recently clarified the issue in *Potter v. Cozen & O'Connor*, 46 F.4th 148 (3d Cir. 2022). There, shareholders of several limited liability companies ("LLCs") brought a derivative action against lawyers involved in the sale of those LLCs, alleging breach of fiduciary duty and legal malpractice. *Id.* at 151-52. The lawyers subsequently moved to dismiss the complaint for

15

failure to state a claim pursuant to Rule 12(b)(6), arguing that the "shareholder standing rule"—"a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment"—precluded the shareholders from "bring[ing] claims of the corporate entities in their own names." *Id.* at 152, 154. In opposition, the shareholders characterized the lawyers' motion as a "challenge to their Article III standing, and hence, a facial attack on the court's subject matter jurisdiction, pursuant to Rule 12(b)(1)." *Id.* at 152. "In a nod to both sides, the District Court ruled in the lawyers' favor, but adopted the shareholders' framing and dismissed their complaint under Rule 12(b)(1)" for lack of Article III standing, and, by extension, subject matter jurisdiction. *Id.* In so doing, the District Court "had in mind the third-party standing doctrine," reasoning that "the only injury-in-fact alleged . . . [was] an injury suffered by the [LLCs] themselves" since the shareholders were "affected . . . only to the extent of their derivative ownership interests." *Id.* (cleaned up).

On appeal, the Third Circuit sought to determine "whether the third-party standing doctrine is jurisdictional" such that it is derived from Article III, or whether it is instead a judge-made prudential principle. *Id.* at 154. After canvassing Supreme Court precedent, its own opinions, and the nature of derivative shareholder harm, the Third Circuit ultimately determined that third-party standing rules—including the shareholder standing rule— should be construed under the latter framework. *Id.* Drawing from a similar concept in antitrust cases, it reasoned:

> Concluding that the third-party standing doctrine is not jurisdictional is . . . consistent with our treatment of a similar question regarding antitrust standing. Antitrust standing focuses on the nature of the plaintiff's alleged injury and asks whether it is of the type that the antitrust statute was intended to forestall. If it is not, the plaintiff has no standing to sue under the antitrust laws. In *Hartig*, we held that antitrust standing, in contrast to Article III standing, does

16

> not implicate a court's subject matter jurisdiction but rather affects only the plaintiff's ability to succeed on the merits, and accordingly a defect in antitrust standing does not put a dismissal under Rule 12(b)(1) . . . legitimately in play. Our holding today is a natural extension of this precedent.

*Id.* at 156-57 (citing *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 269-73 (3d Cir. 2016)).  Thus, the Third Circuit found that the District Court had erred in treating "the shareholder standing rule as constitutional and jurisdictional" such that dismissal was warranted under Rule 12(b)(1) for lack of subject matter jurisdiction, making clear that "third-party standing doctrines" are prudential in nature and "not a matter of Article III standing." *Id*. at 154, 157.  Because arguments under this prudential doctrine are therefore "non-jurisdictional" and "present[] only merits . . . concerns," the proper course would have been for the District Court to "treat the lawyers' motion to dismiss for lack of shareholder standing as a motion under Rule 12(b)(6), instead of 12(b)(1)." *Id.* at 157-58 (vacating order of dismissal under Rule 12(b)(1) and remanding for consideration of the issue under Rule 12(b)(6)).

Against this backdrop, National Liability's third-party standing argument is a non-jurisdictional challenge under the prudential principles, meaning that its Rule 12(b)(1) Motion "will be treated" as if it were a 12(b)(6) Motion.  *See id.*; *cf. Hartig*, 836 F.3d at 270, 273 (suggesting that the district court should have treated the defendant's Rule 12(b)(1) motion for lack of antitrust standing as a Rule 12(b)(6) motion).  To that end, it is well-settled under Pennsylvania law that injured third parties do not have the right to directly sue an insurance company to recover on a judgment rendered against the insured absent a right expressly created by the policy, a statute, or through assignment.  *See Kollar v. Miller*, 176 F.3d 175, 181 (3d Cir. 1999) (citing *Philadelphia Forrest Hills Corp. v. Bituminous Cas. Corp.*, 222 A.2d 493, 494 (Pa. Super. 1966)); *see also Hicks v. Saboe*, 555 A.2d 1241, 1243 (Pa. 1989) (explaining that an insurer's duty to an insured does not run to third parties and noting a limited exception for

17

intended third-party beneficiaries of the policy); *Strutz v. State Farm Mut. Ins. Co.*, 609 A.2d 569, 570 (Pa. Super. 1992) (rejecting an argument that persons injured in a car accident are third-party beneficiaries of the other driver's insurance policy and therefore could bring an action directly against the other driver's insurance company). However, the Third Circuit has yet to consider the exact question at issue in this case—namely, whether an injured third party (here, Zaftr) has prudential standing to seek a declaratory judgment against an insurance company (here, National Liability) relating to a coverage action involving its insured (here, the Kirk Defendants) where that injured third party is neither a party to, third-party beneficiary of, nor assignee of any rights under the policy at issue.

Although several sister courts within this Circuit have addressed this question in recent years and concluded that injured third parties do not have prudential standing under such circumstances, they generally operated under the pre-*Potter* assumption that dismissal should be made pursuant to Rule 12(b)(1) instead of Rule 12(b)(6). *See, e.g.*, *Carrasquillo v. Kelly*, 2018 WL 1806871, at *4 (E.D. Pa. Apr. 17, 2018) (determining that the "Court lack[ed] subject matter jurisdiction" under prudential standing principles to consider a declaratory judgment action brought by an injured third party regarding coverage under an insurance policy to which it was entirely foreign, as the request amounted to an attempt to "dictate the terms of the contractual relationship between" the insurance company and the policyholder and thereby "assert[] the legal interests of a third party[] rather than her own")[4]; *Hickey v. Zurich Am. Ins. Co.*, 2019 WL 6037080, at *2 (W.D. Pa. Nov. 14, 2019) ("Plaintiff here, just like the plaintiff in *Carrasquillo*, is asking this Court to issue a declaration about a third party's legal rights and obligations, rather

---

[4] Zaftr argues that the District Court's reasoning in *Carrasquillo* is inapposite because that case purportedly hinged on a fact not at issue here—specifically, that the underlying lawsuit was still pending in state court at the time the plaintiff sought a declaratory judgment. *See* 2018 WL 1806871, at *1. But that fact had no bearing whatsoever on the District Court's ultimate decision. *See id.* at *3-4.

than her own. This Court finds that Plaintiff lacks the standing to do so. Because this Court finds that Plaintiff lacks standing, this Court lacks subject matter jurisdiction."); *Mager v. Travelers Home & Marine Ins. Co.*, 2020 WL 211548, at *4 (E.D. Pa. Jan. 14, 2020) (approving of *Carrasquillo* and finding that "[a]s a third-party plaintiff to the insurance policy at issue, [Plaintiff] has not demonstrated that she has standing to seek declaratory judgment in this lawsuit"); *Joseph Oliver Constr., LLC v. Utica First Ins. Co.*, 2020 WL 3791564, at *5 (E.D. Pa. July 7, 2020) (on consideration of a Rule 12(b)(1) motion, stating that "[w]e are persuaded by the reasoning in *Carrasquillo* and similar cases, and agree that an injured third party affirmatively seeking a declaratory judgment against an insurer lacks standing to do so. Like the plaintiffs in *Carrasquillo* . . . the [Plaintiffs here] were not a party to the Oliver-Utica First insurance policy, nor did they allege that they had been assigned any of Oliver's rights under the insurance policy."); *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Zonko Builders, Inc.*, 2021 WL 4061564, at *12 (D. Del. Sept. 7, 2021) (granting a party's Rule 12(c) motion and dismissing claim for lack of standing because "[j]ust like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement. . . . In the insurance coverage context, injured third parties may defend themselves in declaratory judgment actions the insurer initiates, but they lack standing to seek declaratory judgment regarding insurance policies to which they are not parties without an assignment."); *Dixon v. Gallagher Bassett Servs.*, 2023 WL 8283608, at *3 (E.D. Pa. Nov. 30, 2023) (dismissing complaint for lack of jurisdiction because "[Plaintiff], an injured third party seeking declaratory judgment as to his eligibility to receive workers compensation benefits, lacks standing to do so because he has not established that he is a party to the insurance policy between his employer . . . and its insurer").

    Here, the Court concurs with the principles outlined in these prior cases with the

19

important caveat that dismissals under the third-party standing doctrine should be made pursuant to Rule 12(b)(6) for failure to state a claim instead of under Rule 12(b)(1) for lack of subject matter jurisdiction. *See Potter*, 46 F.4th at 154-57. Thus, by requesting a declaration that coverage exists under the Insurance Policy, Zaftr is impermissibly asserting the legal interests of the Kirk Defendants as policyholders rather than its own. As a third-party, however, Zaftr lacks standing to do so under prudential principles, and accordingly National Liability's Motion shall be granted pursuant to Rule 12(b)(6) for failure to state a claim.[5] Because further amendment would not cure this threshold legal deficiency in Zaftr's role as an injured third party and therefore be futile, Count II is dismissed with prejudice. *See USX Corp. v. Barnhart*, 395 F.3d 161, 166 (3d Cir. 2006); *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006).

## IV.  CONCLUSION

For the foregoing reasons, the Kirk Law Defendants' Motion is denied, and National Liability's Motion is granted.

An appropriate order follows.

BY THE COURT:

*/s/ Wendy Beetlestone*

**WENDY BEETLESTONE, J.**

---

[5] Zaftr argues, in support of its Article III standing, that National Liability "ratified the Settlement Agreement" and is thus "bound by its terms." At the outset, Zaftr's argument is unavailing because it is well-established that even if a case falls within the "constitutional boundaries" of Article III, "a plaintiff may still lack standing under the prudential principles," as is the case here. *Gladstone Realtors*, 441 U.S. at 99-100; *see also Miller*, 362 F.3d at 221. Regardless, Zaftr did not raise the issue of ratification in the Amended Complaint, *see Commonwealth of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (citation omitted)), and even it did, ratification is an argument more properly made by the Kirk Defendants as policyholders, rather than by Zaftr during the standing inquiry.