IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ZAFTR INC. n/k/a SVELLA FINANCIAL CORP.<br>              **Plaintiff,**<br><br>v.<br><br>JOHN KIRK and KIRK LAW PLLC,<br>              **Defendants,**<br><br>v.<br><br>NATIONAL LIABILITY & FIRE INSURANCE COMPANY d/b/a ATTORNEY PROTECTIVE,<br>              **Garnishee.** | CIVIL ACTION<br><br>NO. 24-2702 |

**OPINION**

This action is a garnishment proceeding brought by Plaintiff, Zaftr Inc., against Defendants John Kirk and Kirk Law PLLC (together, the "Kirk Defendants") and National Liability & Fire Insurance Company d/b/a Attorney Protective ("National Liability"), as garnishee, to enforce collection of Plaintiff's default judgment secured in this breach of settlement action against the Kirk Defendants. Both Zaftr and National Liability move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). For the reasons that follow, Zaftr's motion will be denied, and National Liability's motion will be granted.

**I.**  **BACKGROUND**

In 2020, Zaftr initiated a lawsuit (the "Underlying Action") against the Kirk Defendants, among other parties. *See Zaftr Inc. v. Lawrence*, 2021 WL 4989769 (E.D. Pa. Oct. 27, 2021); *Zaftr Inc. v. Lawrence*, 2023 WL 349256 (E.D. Pa. Jan. 20, 2023). The suit arose from a series of transactions in which Zaftr paid more than $5.6 million to acquire 10,000 Bitcoin from a third-party seller. The Kirk Defendants, representing the entity designated as the seller's broker, were

obligated to hold Zaftr's purchase funds in escrow.  Only upon Zaftr's receipt of the Bitcoin were the Kirk Defendants authorized to release those funds to the seller.  Months later, however, Zaftr had not received any Bitcoin and was unable to secure a full return of the purchase funds.  Zaftr then sued the Kirk Defendants and others, claiming relief specifically from the Kirk Defendants for their failure to follow provisions in the escrow agreements regarding the release and return of Zaftr's purchase funds.  The complaint in the Underlying Action alleged claims for: (1) breach of contract; (2) unjust enrichment; (3) conversion; (4) fraudulent misrepresentation/fraudulent omission; (5) negligent misrepresentation/nondisclosure; (6) civil conspiracy; and, (7) violations of Section 1962(a)–(d) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1961 *et seq*.

In December 2023, Zaftr and the Kirk Defendants executed a settlement agreement of the Underlying Action.  The agreement provided that "[t]he Kirk Defendants shall cause to be delivered to Zaftr the total sum of $700,000" and that "the Settlement Sum is . . . to be delivered as . . . $225,000 from the Kirk Defendants' professional liability insurance carrier [National Liability]," with the remaining $475,000 to be paid by the Kirk Defendants in various installments.  Another provision, anticipating the Kirk Defendants' potential nonpayment and a possible coverage denial by National Liability, preserved Zaftr's "right to challenge [National Liability's] denial of coverage for the claims filed by Zaftr against the Kirk Defendants," and further provided:

> The Parties and [National Liability] agree that neither this Agreement, nor any of the terms contained herein, shall have any impact on whether coverage exists.  This Agreement may not be used in any way as a basis for denying coverage or in arguing that coverage does not exist.  If successful in a coverage challenge, Zaftr may seek to collect the difference between the Settlement Sum less any portion of the Settlement Sum delivered to Zaftr up to a maximum amount of $275,000.

The agreement was not signed by National Liability.  However, in response to Zaftr's

Interrogatories in this matter, National Liability admitted that it "paid $225,000 on behalf of the Kirk Defendants to Zaftr in partial satisfaction of the Kirk Defendants' obligation under the settlement agreement."

The Kirk Defendants made payments pursuant to the settlement agreement of $50,000 and $25,000. They did not, however, pay the final two agreed upon payments—both in the amount of $200,000. Thus, Zaftr is owed $400,000 under the terms of the agreement.

In June 2024, Zaftr filed this lawsuit against the Kirk Defendants for breaching the settlement agreement (the "Current Action"). In this action, Zaftr also named National Liability as a defendant and sought from this Court a declaratory judgment that coverage existed under the Kirk Defendants' insurance policy with National Liability for Zaftr's claims in the Underlying Action. Both the Kirk Defendants and National Liability moved to dismiss. This Court denied the Kirk Defendants' motion but granted National Liability's motion, holding that Zaftr lacked prudential standing because "Zaftr [as a third-party was] impermissibly asserting the legal interests of the Kirk Defendants as policyholders rather than its own." *Zaftr Inc. v. Kirk*, 760 F. Supp.3d 275, 289 (E.D. Pa. 2024).

After the Court denied their motion to dismiss, the Kirk Defendants failed to file an answer to Zaftr's amended complaint. In January 2025, Zaftr therefore filed a request for default pursuant to Federal Rule of Civil Procedure 55(a). Fed. R. Civ. P. 55(a). The Clerk of Court granted the request and entered default. Zaftr then filed a request for default judgment pursuant to Rule 55(b). Fed. R. Civ. P. 55(b). Because Zaftr's claim was for a sum certain, the $400,000 owed to it under the settlement agreement and $18,410 in prejudgment interest, the Clerk entered default judgment against the Kirk Defendants in the amount of $418,410 together with costs. *See id*.

To enforce its money judgment obtained in the Current Action against the Kirk Defendants, Zaftr, pursuant to Federal Rule of Civil Procedure 69(a), sought and obtained a writ of execution issued by the Clerk of Court and directed to National Liability as garnishee, thereby commencing this garnishment proceeding.  Fed. R. Civ. P. 69(a); Pa. R. Civ. P. 3101 *et seq*.  Through it, Zaftr seeks to attach $275,000 that it contends is owed by National Liability on behalf of the Kirk Defendants under the insurance policy.

## II.     LEGAL STANDARD

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  Judgment on the pleadings is appropriate when "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law."  *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008) (citing *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988)).  When deciding a motion for judgment on the pleadings, a court considers the pleadings and exhibits attached thereto, "undisputedly authentic documents attached to the motion for judgment on the pleadings if plaintiffs' claims are based on the documents," and matters of public record.  *Atiyeh v. Nat'l Fire Ins. Co. of Hartford*, 742 F. Supp.2d 591, 595 (E.D. Pa. 2010).  Further, the allegations "presented in the pleadings and the inferences to be drawn therefrom" must be accepted and construed "in the light most favorable to the nonmoving party."  *Rosenau*, 539 F.3d at 221 (citation omitted).

## III.    DISCUSSION

Preliminarily, National Liability contends that the present garnishment is barred by this Court's prior holding that Zaftr does not have prudential standing to seek direct recovery under the policy against National Liability.  That argument is misplaced.  When properly invoked, garnishment "operates as an equitable assignment to the judgment creditor of the judgment

4

debtor's claim against the garnishee," functioning as a "lawsuit within a lawsuit." *Bianco v. Concepts 100, Inc.*, 436 A.2d 206, 208-09 (Pa. Super. 1981).  It is "the beginning of a new proceeding" in which the "garnishee [is] brought into a court having complete jurisdiction to try and determine what, if anything, it owed to the defendant upon its policy of insurance." *First Nat'l Bank v. Maikranz*, 44 Pa. Super. 225, 227 (Pa. Super. 1910).  In such a proceeding, "the injured plaintiff is not suing in her own right but is an assignee of the insured and as such stands in the shoes of the insured." *Johnson v. Beane*, 616 A.2d 648, 652 n.3 (Pa. Super. 1992), *aff'd*, 664 A.2d 96 (1995).  Accordingly, this Court's prior holding that Zaftr lacked standing to bring a direct action under the policy has no bearing on this garnishment proceeding.

This also forecloses any reliance on the law-of-the-case doctrine, which applies only to the *same* issues.  *Mack v. Yost*, 63 F.4th 211, 231 (3d Cir. 2023) ("Usually, the law of the case doctrine dictates that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" (quoting *Farina v. Nokia Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010)).  In a garnishment proceeding, Zaftr stands in the shoes of the Kirk Defendants to assert whatever coverage rights they may have against National Liability, which is distinct from Zaftr's prior attempt to obtain direct recovery against National Liability through a declaratory judgment.

Now, to the meat of the matter:  Garnishment, formerly known as attachment execution, is a post-judgment proceeding "utilized in supplementary execution proceedings as a vital means of enforcing valid money judgments." 24 Pennsylvania Law Encyclopedia, Execution § 191 (2025).  It is "a legal proceeding brought by a creditor, the 'garnishor,' against a third party, the 'garnishee,' to obtain property held by the garnishee but belonging to the debtor, in order to satisfy a debt owed by the debtor to the garnishor." 16A Couch on Ins. § 232:197.  Garnishment

debtor's claim against the garnishee," functioning as a "lawsuit within a lawsuit." *Bianco v. Concepts 100, Inc.*, 436 A.2d 206, 208-09 (Pa. Super. 1981).  It is "the beginning of a new proceeding" in which the "garnishee [is] brought into a court having complete jurisdiction to try and determine what, if anything, it owed to the defendant upon its policy of insurance." *First Nat'l Bank v. Maikranz*, 44 Pa. Super. 225, 227 (Pa. Super. 1910).  In such a proceeding, "the injured plaintiff is not suing in her own right but is an assignee of the insured and as such stands in the shoes of the insured." *Johnson v. Beane*, 616 A.2d 648, 652 n.3 (Pa. Super. 1992), *aff'd*, 664 A.2d 96 (1995).  Accordingly, this Court's prior holding that Zaftr lacked standing to bring a direct action under the policy has no bearing on this garnishment proceeding.

This also forecloses any reliance on the law-of-the-case doctrine, which applies only to the *same* issues.  *Mack v. Yost*, 63 F.4th 211, 231 (3d Cir. 2023) ("Usually, the law of the case doctrine dictates that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" (quoting *Farina v. Nokia Inc.*, 625 F.3d 97, 117 n.21 (3d Cir. 2010))).  In a garnishment proceeding, Zaftr stands in the shoes of the Kirk Defendants to assert whatever coverage rights they may have against National Liability, which is distinct from Zaftr's prior attempt to obtain direct recovery against National Liability through a declaratory judgment.

Now, to the meat of the matter:  Garnishment, formerly known as attachment execution, is a post-judgment proceeding "utilized in supplementary execution proceedings as a vital means of enforcing valid money judgments." 24 Pennsylvania Law Encyclopedia, Execution § 191 (2025).  It is "a legal proceeding brought by a creditor, the 'garnishor,' against a third party, the 'garnishee,' to obtain property held by the garnishee but belonging to the debtor, in order to satisfy a debt owed by the debtor to the garnishor." 16A Couch on Ins. § 232:197.  Garnishment

allows a judgment creditor (such as Zaftr) to reach assets of its judgment debtor (here, the Kirk Defendants) held by a third party (here, allegedly National Liability) and is a means of collecting a debt out of the property of the debtor in the hands of the third party. *Brown v. Candelora*, 708 A.2d 104, 107 (Pa. Super. 1998).

Federal Rule of Civil Procedure 69(a) provides that the procedure on execution "must accord with the procedure of the state where the court is located . . . ." Fed. R. Civ. P. 69(a)(1). Accordingly, because this Court sits in Pennsylvania, this garnishment proceeding is governed by Pennsylvania law.

Pennsylvania Rule of Civil Procedure 3102 states that "a judgment shall be enforced by a writ of execution . . . ." Pa. R. Civ. P. 3102. Rule 3111, which describes how such writ is to be served, provides that "[s]ervice of the writ upon the garnishee shall attach all property of the defendant . . . which is in the possession of the garnishee." Pa. R. Civ. P. 3111. The judgment creditor may then serve interrogatories directed to the garnishee in the form prescribed by Rule 3253.[1] Pa. R. Civ. P. 3253. The garnishee answers and may assert certain defenses, including "the defenses of the immunity or exemption of property," "any defense or counterclaim which the garnishee could assert against the defendant if sued by the defendant," and "any claim which the garnishee could assert against the plaintiff if sued by the plaintiff." Pa. R. Civ. P. 3145.

Although the Pennsylvania Rules treat interrogatories as analogous to a complaint, *see* Pa. R. Civ. P. 3145, a plaintiff need not "plead all the facts which a defendant, in whose shoes the plaintiff stands, would have to plead to recover against the garnishee." 24 Pennsylvania Law

---

[1] When an insurer is the garnishee, "the standard form of interrogatories must be supplemented by additional appropriate interrogatories directed toward the existence of the insurance policy, the coverage and its terms." *Helms v. Chandler*, 223 A.2d 30, 31 (1966). Zaftr followed the standard form of interrogatories provided by Rule 3253, but did not provide supplemental interrogatories regarding the insurance policy. National Liability does not, however, argue this deficiency precludes recovery of insurance proceeds by Zaftr.

Encyclopedia, Execution § 207 (2025).  Accordingly, interrogatories are better viewed as a discovery device "designed to ascertain the property in the possession of a garnishee." *Jacks Auto Parts Sales, Inc. v. MJ Auto Body & Repair, LLC*, 305 A.3d 162, 169 (Pa. Super. 2023) (quoting *Jones v. McGreevy*, 270 A.3d 1, 7 n.5 (Pa. Super. 2022)); *see also* 24 Pennsylvania Law Encyclopedia, Execution § 207 (2025).

"In an attachment proceeding, the burden of proof rests on the plaintiff, who must establish the facts necessary to show the liability of the garnishee."  24 Pennsylvania Law Encyclopedia, Execution § 209 (2025).  Thus, the plaintiff must show that the garnishee holds assets liable to attachment; once a prima facie case is shown (or admitted), the burden shifts to the garnishee to demonstrate that it is not subject to garnishment. *Id*.

Under Pennsylvania law, it is "well-settled" that garnishment is a viable means for a judgment creditor to collect on a judgment from the debtor's liability insurer. *Butterfield v. Giuntoli*, 670 A.2d 646, 651 (Pa. Super. 1995).  In this posture, the insurer's potential liability as garnishee rests on its alleged breach of the insurance contract between it and the judgment debtor, namely, the failure to pay amounts due under the policy.[2]  *Bianco*, 436 A.2d at 208 ("The insurer's liability qua garnishee is based upon its breach of the insurance contract with the judgment debtor.").  Zaftr is asserting here that National Liability, as garnishee, is liable to the extent it failed to remit policy proceeds allegedly due to the Kirk Defendants.  To establish such liability, a plaintiff must show two elements: "(1) [its] judgment, which operates as the

---

[2] Zaftr's reliance on *Cedarwood-Young Co. v. Allen Enters. & Recycling, LLC*, 2014 WL 5493813, at *1 (W.D. Pa. Oct. 30, 2014), a non-precedential opinion, is inapposite.  That case involved attempted garnishment of a contractual debt already owed by the insurer to its insured under a settlement resolving a pending insurance claim, not garnishment of payment obligations allegedly arising under the insurance policy itself.  *See id*. ("[T]he duty of [the insurer] to pay money to [the insured] apparently arose under a settlement agreement to resolve litigation, rather than under an insurance policy.").

7

assignment to [it] of the judgment debtor's claims;" and, "(2) the insurer's obligation to the judgment debtor, by proving the existence of the policy providing liability coverage for [its] claim" made against the judgment debtor. *Id*. at 209 (omitting citations).

### A. Judgment

To satisfy the first element, Zaftr must show it is executing on a judgment in that, as a matter of Pennsylvania procedure, garnishment is available only to execute upon "a judgment or order requiring the payment of money entered in any court . . . including a final or interlocutory order for payment of costs." Pa. R. Civ. P. 3101(a); 24 Pennsylvania Law Encyclopedia, Execution § 192 (2025). Zaftr goes back and forth regarding whether it is seeking to execute upon its <u>default judgment</u> against the Kirk Defendants in the Current Action or upon the <u>settlement</u> of the Underlying Action. Specifically, Zaftr's Interrogatories stated they were being served "in connection with the Writ of Execution served upon [National Liability] in relation to the <u>default judgment</u> entered against" (emphasis added) the Kirk Defendants. In its briefing, however, Zaftr asserts it is "entitled to garnish upon the $275,000 that [National Liability] owes the Kirk Defendants under the Insurance Policy," adding that "[t]he $275,000 owed by [National Liability] on behalf of the Kirk Defendants does not arise from the [default] Judgment, but rather, from the <u>settlement</u> of the [Underlying] Action." (emphasis added). National Liability, for its part, describes Zaftr as "garnish[ing] upon a default judgment."[3]

---

[3] The parties' repeated use of the phrase "garnish upon" is imprecise. A judgment creditor does not "garnish upon" a judgment; the creditor executes upon the judgment. *See Garnish*, Black's Law Dictionary (12th ed. 2024) (defining "garnish" as "subject[ing] (property) to garnishment" or, more precisely as "attach[ing] (property held by a third party) in order to satisfy a debt"); *see also Execute*, Black's Law Dictionary (12th ed. 2024) (defining "execute" as "enforc[ing] and collect[ing] on (a money judgment), providing the example that "Williams asked the sheriff to execute on the judgment"). Properly framed, the creditor seeks to execute upon the judgment, which may include issuance of garnishment proceedings against identified garnishees. Accordingly, the Court construes the parties' references to "garnish upon" as shorthand for a request to execute upon the judgment, including by garnishment where the procedural rules permit.

To dispel the confusion, only the default judgment Zaftr obtained against the Kirk Defendants for breach of the settlement agreement, in the amount of $418,410, as entered by the Clerk of Court, can be executed upon here. The settlement agreement in the Underlying Action was never docketed and—of paramount importance here—there is not, and never was, an order entering judgment on the settlement agreement. Thus, it cannot be gainsaid that the settlement agreement is not a judgment and cannot be. These garnishment proceedings can only arise from the default judgment in the Current Action.[4]

### B. Insurer's Obligation to Judgment Debtor

The next step in the analysis is whether Zaftr can show that a policy exists that covers its claims against the Kirk Defendants, thereby creating National Liability's obligation. *Bianco*, 436 A.2d at 209.[5]

Zaftr's sole claim against the Kirk Defendants reduced to judgment in the Current Action is that they breached the settlement agreement by not paying amounts the Kirk Defendants agreed to pay Zaftr pursuant to that agreement, a breach of contract claim. *See* Settlement Agreement, ¶ 4 (ECF No. 45, Ex. 6) ("[T]he terms of this Agreement are contractual . . . ."). The parties could not have made it more clear that the settlement agreement was: (i) a compromise of the claims made in the Underlying Action, *see* Settlement Agreement, ¶ 5 (ECF No. 45, Ex. 6) ("It is expressly understood and agreed that this Agreement is a compromise of disputed claims .

---

[4] For garnishment purposes, whether a judgment is obtained by default or otherwise is immaterial—all judgments are treated the same. *See, e.g.*, *Helms*, 223 A.2d at 31 (Garnishment where the judgment being executed upon was "obtained for failure to file an answer."); *Jacks Auto Parts Sales, Inc.*, 305 A.3d at 165 (Garnishment where judgment being executed was "a default judgment in the amount of $31,812.82.").

[5] "Where a defendant, insured under a policy of liability insurance, has been found liable to a plaintiff for damages arising from a covered loss, the contract of insurance operates to create a debt in the amount of [that liability], owed by the insurer to the insured." *Brown*, 708 A.2d at 107.

9

. . ."); (ii) intended to resolve those claims, *see* Settlement Agreement (ECF No. 45, Ex. 6) ("[T]he Parties each desire to resolve all disputes between them . . . ."); and (iii), not an admission of liability by any party with respect to those claims, *see* Settlement Agreement ¶ 5 (ECF No. 45, Ex. 6) ("[T]he acceptance of and agreement to the terms of this Agreement, and the negotiation relating to it, is not and shall not constitute, or be construed as, offered as, received as, used as, or deemed to be an admission of liability or fault on the part of any Party which is expressly denied . . . ."). Indeed, paragraph 2 of the settlement agreement, concerning waivers and general releases, not only discharges the Kirk Defendants from "all actions, causes of action, suits, debts, disputes, damages, claims, obligations, liabilities, costs, expenses, losses, and demands of any kind whatsoever, at law or in equity, whether matured, liquidated or unliquidated, vested or contingent, known or unknown, from the beginning of time through and including the date hereof," but, it also brought within the aegis of that release the Kirk Defendants' insurers, "including but not limited to [National Liability]." *See* Settlement Agreement, ¶ 2 (ECF No. 45, Ex. 6). In short, upon the execution of the settlement agreement, any potential liability on the claims in the Underlying Action was extinguished. Accordingly, whether the policy would have covered those claims, from which Zaftr contends the proceeds arise, is immaterial to the analysis of the contractual breach of settlement claim.

   Thus, the question to be addressed here is whether the Kirk Defendants' insurance policy with National Liability covers that claim or whether coverage is excluded by the terms of the policy. In other words, whether National Liability owes any obligation to the Kirk Defendants turns on whether the sole claim encompassed by the default judgment—breach of the settlement contract—falls within the insurance policy's coverage. That is a question of policy interpretation.

"It is the function of the court to interpret insurance contracts under Pennsylvania law." *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011) (citations omitted).  To determine whether a claim comes within the insurance policy's coverage, a court must first ascertain the policy's scope.  *Butterfield*, 670 A.2d at 653.  "The interpretation of the scope of coverage of an insurance contract is a question of law." *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 360 (3d Cir. 2004).  While courts consider the reasonable expectations of the insured, those expectations cannot override clear, unambiguous limitations.  *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649, 651 (Pa. Super. 1994) (citations omitted).  "A court must interpret the plain language of the insurance contract read in its entirety, giving effect to all its provisions." *Am. Auto. Ins. Co.*, 658 F.3d at 320.  When an insurance policy's language is clear and unambiguous, that language controls.  *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999).  However, "if the contract's terms are reasonably susceptible to more than one interpretation, then they must be regarded as ambiguous." *Am. Auto. Ins. Co.*, 658 F.3d at 321 (citing *Med. Protective Co.*, 198 F.3d at 103).  An ambiguous provision "must be construed against the insurer and in favor of the insured." *Id.* (citing *Med. Protective Co.*, 198 F.3d at 104).

Whether National Liability was required to indemnify the Kirk Defendants following the default judgment, and thus making those proceeds attachable by Zaftr, "cannot be determined merely on the basis of whether the factual allegations of [the underlying] complaint potentially state a claim against the insured" that would be covered under the insurance policy.  *C.H. Heist Caribe Corp. v. Am. Home Assur. Co.*, 640 F.2d 479, 483 (3d Cir. 1981).  Rather, there must be a determination that the insurer's policy actually covers the claimed incident.  *Pac. Indem. Co. v. Linn*, 590 F. Supp. 643, 650 (E.D. Pa. 1984), *aff'd*, 766 F.2d 754 (3d Cir. 1985).

In coverage disputes like this one, the insured, or in this case Zaftr, bears the initial

burden of proving that their claim falls within the scope of coverage, while the insurer bears the burden of proving the applicability of any exclusions. *See Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1446 (3d Cir. 1996) (citations omitted). If an exclusion is invoked, the insured also bears the burden of proving that an exception to an exclusion applies. *See Air Prods. & Chemicals, Inc. v. Hartford Acc. & Indem. Co.*, 25 F.3d 177, 180 (3d Cir. 1994).

### i. The Policy

The insurance policy provides that National Liability "will pay on [the Kirk Defendants'] behalf all . . . damages up to the Limits of Liability as set forth in [the policy], for a claim to which this policy applies . . . . " Yet National Liability's "agreement to defend or indemnify [the Kirk Defendants] for a claim shall only apply if . . .[t]he claim arises from a wrongful act committed by [the Kirk Defendants] . . . in [their] performance of legal services . . . ." A "wrongful act" is defined as "any actual or alleged negligent act, error or omission in the performance of legal services."

The policy also contains an exclusion in Section E.2.c for any claim "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving . . .[the Kirk Defendant's] actual or alleged liability under any oral or written contract or agreement, unless such liability would have attached to the [Kirk Defendants] by law in the absence of such contract or agreement."

### i. Coverage[6]

Zaftr's only claim reduced to judgment is its breach of settlement claim against the Kirk

---

[6] The policy provides that it "only applies to claims that are first made against the insured . . . during the policy period or any applicable extended reporting period." The policy period for the attached insurance contract ended on March 2nd, 2022. Zaftr first asserted its breach of settlement claim against the Kirk Defendants on June 8, 2024, well after the policy period closed, so absent an applicable extended reporting period, the claim falls outside the policy's grant of coverage. Neither party identifies any such extension, but, even if one were to assume there was an extension, the claim still would not be covered under the insurance policy for the reasons set forth below.

12

Defendants—a matter of contract law.  The question, then, is whether the policy affords coverage for this breach of contract claim.[7]  Even assuming arguendo that coverage could be triggered, a doubtful proposition, as a pure breach of contract claim generally does not constitute a negligent act, error, or omission, *see Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (2014) ("If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract" and not negligence.),[8] any potential coverage is barred by the policy's language limiting contractual liability.

Further, National Liability's argument that Section E.2.c of the insurance policy bars coverage, is on point.  Section E.2.c. excludes coverage for "any claim . . . based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving . . . [the Kirk Defendants'] liability under any oral or written contract or agreement."  The exclusion, however, contains an exception for "such liability that would have attached to the Insured by law in the absence of such contract or agreement."

The exclusion's lead-in clause excluding claims "based upon, arising out of, directly or indirectly resulting from or in consequence of, or in any way involving" the Kirk Defendants' contractual liability, at a minimum, applies the exclusion to all claims that would not exist but-

---

[7] Zaftr correctly notes that the policy obligates National Liability to pay damages arising from a "monetary judgment, award, *or settlement*." (emphasis added).  But its reliance on that language to premise recovery on the claims made in the Underlying Action is unavailing here because, as previously established, a garnishment action must be premised on a judgment and the only claim reduced to judgment, and thus subject to garnishment, is the breach of contract claim in the Current Action.

[8] "[A] breach of contract caused by a negligent act can fall within the definition of 'negligent act, error or omission' in a professional liability policy."  *See Nat'l Recovery Agency, Inc. v. AIG Tech. Servs., Inc.*, 2005 WL 2100702, at *11 (M.D. Pa. Aug. 26, 2005) (citing *Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484 (Pa. 1959)).  But neither party addresses this carve out in their briefing with regard to the default judgment central to the issue here.

for the excluded conduct. *See Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 109-10 (Pa. 1999) (holding that the phrase "arising out of" indicates a "but for" or "cause and result" relationship); *Leithbridge Co. v. Greenwich Ins. Co.*, 464 F. Supp.3d 734, 739 (E.D. Pa. 2020) ("Under Pennsylvania law, a policy provision containing the phrase 'arising out of' is satisfied by '[b]ut for' causation, i.e., a cause and result relationship."). However, the clause in this policy is even broader than most standard "arising out of" insurance exclusions, as it encompasses claims that are "based upon," "directly or indirectly resulting from or in consequence of," or "in any way involving" the excluded conduct. *See Twin City Fire Ins. Co. v. Glenn O. Hawbaker, Inc.*, 118 F.4th 567, 576 (3d Cir. 2024) ("The language 'based upon, arising from, or in any way related to' is sweeping in scope; the phrase 'arising from' requires only but-for causation (not proximate causation), and the phrase 'in any way related to' seems to permit an even looser connection between a claim."); *see also First Mercury Ins. Co. v. Rossi*, 2011 WL 1235092, at *6 (E.D. Pa. Apr. 1, 2011) (holding that an identical lead-in clause was broader than "arising out of"); *ACE Cap. Ltd. v. Morgan Waldon Ins. Mgmt.*, LLC, 832 F. Supp.2d 554, 571 (W.D. Pa. 2011) ("Even if the claims cannot be said to 'arise from' the plans' insolvencies, it cannot be argued that the claims do not 'relate to' these insolvencies.").

Nearly identical exclusions have been held to apply only to "simple" breach of contract claims. *Exec. Risk Indem., Inc. v. CIGNA Corp.*, 976 A.2d 1170, 1173 (Pa. Super. 2009) ("It is clear looking at the language of the policy that a simple breach of contract claim is not covered by this policy."). As further clarified, "simple" breach of contract claims are those rooted solely in the contract itself—such as a failure to pay or perform as contractually obligated. *CIGNA*, 976 A.2d at 1173–74 (providing examples of simple breaches of contract, such as "simply the failure to pay a claim or using a procedure that underpays claims"). Given that the default judgment

here rests on the Kirk Defendants' alleged failure to abide by the specific terms of the settlement agreement—to wit, properly paying the agreed upon amounts on specific dates, the claim falls squarely within the contractual-liability exclusion. As a result, Zaftr has failed to demonstrate that the exception to Section E.2.c. applies, and the exclusion bars coverage for this claim.

IV.     CONCLUSION

For the reasons set forth above, National Liability's Motion for Judgment on the Pleadings shall be granted, and Zaftr's motion shall be denied.

An appropriate order follows.

**BY THE COURT:**

**S/ WENDY BEETLESTONE**

_____
**WENDY BEETLESTONE, C.J.**